IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**DANNY N. LINDSLEY,**                                      Case No. 3:12-CV-00552-SU

       Plaintiff,

   v.                                                                    **FINDINGS AND**
                                                                              **RECOMMENDATIONS**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

       Defendant.
_____

SULLIVAN, Magistrate Judge:

     Danny Lindsley ("plaintiff") brings this action pursuant to the Social Security Act ("Act")

to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner").  The Commissioner denied plaintiff's applications for disability insurance

benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act.  For

the reasons set forth below, the Commissioner's decision should be affirmed and this case should

be dismissed.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On January 29, 2009, plaintiff protectively filed applications for DIB and SSI. Tr. 10, 126-131. After the applications were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 10, 86-91. On January 7, 2011, an ALJ hearing was held before the Honorable Steven Lynch, at which plaintiff testified and was represented by counsel; a vocational expert ("VE") and plaintiff's fiancé, Angela Sterling, also testified. Tr. 10, 24-57. On January 14, 2011, ALJ Lynch issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 10-19. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Thereafter, plaintiff filed an appeal in this Court.

## FACTUAL BACKGROUND

Born on December 9, 1957, plaintiff was 48 years old on the alleged onset date of disability and 53 years old at the time of the hearing. Tr. 17, 126-131. Plaintiff dropped out of high school after the eleventh grade and has not obtained a GED. Tr. 167. He has past relevant work experience as an auction assistant, furniture mover, and retail management owner. Tr. 50-52. Plaintiff alleges disability beginning on August 1, 2006[1] due to back pain associated with degenerative disc disease. Tr. 159.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d

---

[1] Plaintiff initially alleged a disability onset date of March 20, 2006. Tr. 126-131. At the hearing, plaintiff amended his alleged onset date to August 1, 2006. Tr. 10, 31-32.

Page 2 - FINDINGS AND RECOMMENDATION

498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *See Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 12. At step two, the ALJ determined that plaintiff had the following severe impairment: "herniated disc lumbar spine, status post fusion surgery." *Id.* At step three, the ALJ found that plaintiff's impairment, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 13.

Because he did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, "except: he can lift 20 pounds occasionally, and 10 pounds frequently[;] he is limited to only occasional climbing and balancing; he can perform less than occasional stooping, kneeling, crouching, and crawling; he should not work at unprotected

heights; and he needs to be able to change positions from sitting to standing every hour." *Id.*

At step four, the ALJ found that plaintiff was unable to perform his past relevant work. Tr. 17. Finally, at step five, the ALJ found that jobs exist in significant numbers in the national and local economies that plaintiff could perform, such as small product assembly, electronics worker, and cashier parking lot attendant. Tr. 18. Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act and, accordingly, was not entitled to benefits. *Id.*

**DISCUSSION**

Plaintiff alleges that the ALJ erred by: (1) rejecting his subjective symptom testimony; and (2) improperly evaluating the lay testimony.

## I.    <u>Plaintiff's Credibility</u>

Plaintiff first argues that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom testimony regarding the extent of his impairments.[2] *See* Pl.'s Opening Br. 5-14. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

---

[2] Plaintiff also contends that the "ALJ failed to 'specifically identify' the testimony that he found less than credible." Pl.'s Opening Br. 4. Contrary to plaintiff's assertion, the Court finds that the ALJ adequately identified and discussed the discredited testimony. *See, e.g.*, Tr. 13-15 (summarizing plaintiff's hearing testimony and incorporating that discussion into the credibility analysis); *see also Khal v. Astrue*, 2013 WL 876290, *3-4 (D.Or. Mar. 6, 2013) (when making a credibility determination, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)).

A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In this case, the ALJ determined that plaintiff's medically determinable impairment could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible because of: (1) his activities of daily living; (2) the medical opinion evidence; (3) his conservative medical treatment; and (4) his sporadic work history. Tr. 13-16.

Notably, the ALJ found that plaintiff's activities of daily living belied his subjective testimony. Tr. 14-15. Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a basis for discrediting it. *See Burch*, 400 F.3d at 680; *Smolen*, 80 F.3d at 1284 n.7. At the hearing, plaintiff rated his daily back pain as an "eight to nine" out of ten, with ten being the most painful. Tr. 35. He testified that he spends his time on "a couple of hobbies, I build, you know, birdhouses and whatnot, and I can do it, you know, a half hour at a time or so, and I come in and rest, and tinkering with things like that." Tr. 34, 39. However, plaintiff also stated that he needed "to sit down after standing . . . for a good hour or so" and change positions approximately every 20 minutes. Tr. 34, 38-39. Despite his "constant" pain, plaintiff

reported that he does not take any prescription or over-the-counter pain medication.[3]  Tr. 34-35, 38.

He clarified that he stopped taking prescription pain medication because "they just cloud my head

so much, I can't think straight" and nothing "really relieved the pain . . . [although Oxycontin] made

me think that I wasn't hurting as bad."  Tr. 35.  Finally, plaintiff indicated that, even though he

stopped taking prescription medication, he still had trouble concentrating.  Tr. 40.

        The ALJ found that the record contradicted plaintiff's contentions at the hearing about how

debilitating his pain was.  Tr. 20.  For example, the ALJ observed that plaintiff reported no problems

with personal care, such as "showering, making breakfast, and using a computer to check his email,"

and is able to perform household chores as needed, including "wash[ing] the laundry, mow[ing] the

yard, . . . wash[ing] his car[,] driv[ing] a car,[and] shopp[ing] for groceries."[4]  Tr. 14, 169-173.  As

for hobbies, plaintiff stated that he watches television and reads daily, "work[s] on cars, build[s]

furniture, and plays golf once a month."  Tr. 14, 173.  The ALJ further noted that in 2008, two years

after the alleged onset date of disability, plaintiff "worked at a golf course," five days a week for ten

hours per day, and "earned $14,000."  Tr. 14-15, 152.

        The ALJ determined that these non-work activities reveal an ability to perform a limited

range of light work.  Tr. 14-15.  While the ALJ ultimately gave plaintiff "the benefit of the doubt

and [found] that he was given special accommodations at [the golf course] job," the ALJ nonetheless

determined that this work "indicate[s] the claimant's daily activities have, at least at times, been

---

        [3] Plaintiff did state that "I take an over the counter sometimes at night to try to help me
sleep."  Tr. 34.  It is unclear from plaintiff's testimony or the record whether this reference was
to an over-the-counter pain or sleep medication, or some combination thereof.

        [4] The Court recognizes plaintiff's statement that it only takes "about 10 min[utes]" for
him to mow the lawn or wash his car.  Tr. 176.

Page 7 - FINDINGS AND RECOMMENDATION

somewhat greater than the claimant has generally noted." Tr. 15. In addition, the ALJ emphasized that plaintiff's continued capacity to golf contravened his allegations of debilitating pain. Tr. 14; *compare* Tr. 42 (plaintiff's hearing testimony that he continued to play "a few holes" every "once in a great while"), *and* Tr. 173 (plaintiff's undated adult function report, likely prepared in 2009, indicating that he golfed "once or twice a month"), *with* Tr. 159 ("twisting causes sharp stabbing pain in my lower back and left hip"), Tr. 174-76 (bending and reaching are "very painful"), *and* Tr. 197 ("pain is constant but any phisacal activitys [sic] cause severe stab").

Thus, because plaintiff's level of activity is inconsistent with the degree of impairment that he alleges, the ALJ found plaintiff's testimony about the severity of his limitations not credible. Tr. 14-15; *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ( "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment"). Accordingly, the ALJ provided a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. Further, while not dispositive, the Court notes that the ALJ's RFC, which includes an accommodation for plaintiff to change positions every 30 minutes, is largely consistent with plaintiff's hearing testimony and adult function report.[5] *Compare* Tr. 13, *with* Tr. 34-43, *and* Tr. 169-76.

Moreover, the ALJ found that plaintiff was not fully credible because the medical evidence

---

[5] Nevertheless, plaintiff relies on the VE, who reported that a claimant with an inability to concentrate "20% of the day" and who needed two extra 30-minute breaks to "lie down or recline" would not be able to maintain competitive employment. Pl.'s Opening Br. 14-15 (citing Tr. 55-56). However, plaintiff does not cite to, and the Court is not aware of, any evidence in the record that supports plaintiff's contention that his impairments resulted in such limitations. *See generally id.*

did not support the degree of severity alleged.[6]  Tr. 15.  "Contradiction with the medical record is

a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169

F.3d 595, 599-60 (9th Cir. 1999).  Here, the ALJ summarized all of the relevant medical evidence[7]

and observed that a number of doctors opined that plaintiff was capable of a limited range of light

work.  Tr. 15-16.  For example, the ALJ explained that, although plaintiff stated that he could only

lift 20 pounds and could sit or stand for 20 minutes at a time, treating physician Darrell Brett, M.D.,

repeatedly opined, as recently as October 6, 2010, that plaintiff could perform light work, except

with no: lifting or carrying more than 25 pounds; repetitive lifting, bending, and stooping; and sitting

or standing in a stationary position for more than two consecutive hours.  Tr. 15, 38-39, 159, 234-35,

238, 255-56, 296-98.  Further, as the ALJ recognized, plaintiff's surgery was successful and

subsequent MRI's and x-rays of plaintiff's back were unremarkable except for minimal degenerative

changes.  Tr. 14-15, 267, 278, 295, 300.

---

[6] Plaintiff contends that this finding was erroneous because it is legally impermissible "for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." Pl.'s Opening Br. 12.  Plaintiff is correct; if that was the only reason the ALJ provided for finding his testimony not credible, plaintiff would be entitled to the relief he seeks. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *Smolen*, 80 F.3d at 1281.  However, as discussed above, the ALJ provided additional reasons for discrediting plaintiff's testimony, including his activities of daily living.  Tr. 14-16.

[7] The only medical evidence in the record not addressed by the ALJ was from Timothy Gray, D.O.  Tr. 217-32.  Dr. Gray, however, did not offer any opinion as to plaintiff's functional limitations or ultimate disability; rather, to the extent that they are decipherable, Dr. Gray's chart notes appear to document plaintiff's complaints.  *See, e.g., id.*  Additionally, plaintiff ceased treatment with Dr. Gray sometime in 2007.  Tr. 221 (most recent chart note from Dr. Gray is dated August 30, 2007).  Thus, plaintiff neither cites to Dr. Gray's reports in his briefs nor argues that the ALJ erred by failing to address them.  *See generally* Pl.'s Opening Br.; Pl.'s Reply Br.

The ALJ also remarked that Kim Webster, M.D., who completed the most recent physical examination of plaintiff on October 21, 2010, determined that plaintiff could sit, stand, or walk for two hours consecutively; sit, stand, or walk for six hours total in an eight hour workday; reach, handle, finger, and push/pull frequently; and lift and carry ten pounds occasionally. Tr. 15-16, 280-89.[8] Lastly, while refusing to endow their opinions with "much weight," the ALJ noted that the consulting sources in the record all opined that plaintiff was capable of performing a limited range of light work. Tr. 16, 260-67, 276.

In sum, the foregoing discussion reveals that the ALJ identified substantial and specific evidence in the record that undermines plaintiff's claims that his impairments were so great that he was totally disabled and unable to work. Although the evidence of daily activities may admit of an interpretation more favorable to plaintiff, the ALJ's interpretation is nonetheless reasonable. Accordingly, this Court "may not substitute [its] judgment for the ALJ's." *Massachi*, 486 F.3d at 1152; *Burch*, 400 F.3d at 680-81. As such, the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective testimony regarding the extent of his limitations. Even if it was legal error for the ALJ to use plaintiff's work history or conservative medical treatment to discount his testimony, of which the Court offers no opinion, the error is harmless because the ALJ provided additional, valid reasons to support the ultimate credibility determination. *See Carmickle*, 533 F.3d at 1162-63. Therefore, the ALJ's credibility finding should be affirmed.

---

[8] As the ALJ acknowledged, the narrative summary in Dr. Webster's report, which includes no limitations, is inconsistent with his check-the-box assessment, which identifies the limitations set forth above. *Compare* Tr. 283, *with* Tr. 284-89.

Page 10 - FINDINGS AND RECOMMENDATION

## II.    <u>Lay Testimony</u>

Plaintiff next asserts that the ALJ failed to provide a legally sufficient reason to reject Ms. Sterling's testimony.  Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account.  *See Molina*, 674 F.3d at 1114 (citations omitted).  The ALJ must provide reasons germane to each witness in order to discount competent lay testimony.  *Id.*; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (lay testimony may be rejected where it is inconsistent with the claimant's daily activities or the objective medical evidence).

Here, Ms. Sterling offered testimony relating to plaintiff's symptoms at the hearing.  Tr. 43-48.  Her testimony was similar to plaintiff's.  *Id.*  Specifically, Ms. Sterling stated that:

> Two years into recovery, the pain in the back remained. What I observed him doing daily is tinker a little bit with his projects that he might have going, come in, take a break, do a little reading, then return to try to accomplish a task, whatever that task was. But even in working on that task caused him discomfort. Even sitting on the sofa causes him discomfort, but the pain is constant. It exhausts him as well.

Tr. 46.  Additionally, Ms. Sterling observed that plaintiff had trouble concentrating "because the pain is still there."  Tr. 46-47.

The ALJ gave "little weight to Ms. Sterling's opinion" because she was not an "acceptable medical source" and "her statements [were] not in accordance with the claimant's activities of daily

Page 11 - FINDINGS AND RECOMMENDATION

living [or] with the medical record as a whole." Tr. 16-17. Thus, with the exception of the medical source rationale, the ALJ rejected Ms. Sterling's statements for the same reasons that he discredited plaintiff's testimony.

As an initial matter, plaintiff is correct that Ms. Sterling's status as a non-acceptable medical source is not a legally sufficient reason to reject her lay testimony. *See* Pl.'s Opening Br. 17 (citing *Dodrill*, 12 F.3d at 918-19; and *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). However, the ALJ's error in relying on this rationale was harmless because the other reasons provided are germane to Ms. Sterling and supported by substantial evidence. *See Molina*, 674 F.3d at 1115 (citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F .3d 1050, 1054–56 (9th Cir. 2006). As discussed above, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony. Namely, the ALJ found that plaintiff's statements were undermined by his activities of daily living and the medical evidence of record. Thus, it follows that the ALJ did not err in discrediting Ms. Sterling's testimony for those same reasons. *See Valentine*, 574 F.3d at 694; *see also Khal*, 2013 WL 876290 at *6 ("'the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well' to lay testimony") (quoting *Molina*, 674 F.3d at 1117). Accordingly, the ALJ's decision should be upheld as to this issue.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 29, 2013. If no objections are filed, review of the

Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 11th day of April, 2013.


  /s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge